**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Guardian Angel Credit Union**</u>

   **v.**                                      Case No. 08-cv-261-PB
                                                          Opinion No. 2009 DNH 119
<u>**MetaBank et al.**</u>

**MEMORANDUM AND ORDER**

Guardian Angel Credit Union ("Guardian Angel") has moved to certify a plaintiffs' class action against MetaBank and Meta Financial Group, Inc. (collectively, "MetaBank") and appoint Guardian Angel's attorneys as class counsel. MetaBank objects, arguing that Guardian Angel cannot meet the requirements of Federal Rule of Civil Procedure 23. For the reasons given below, I deny Guardian Angel's motion to certify.

**I.  BACKGROUND**

On or about April 15, 2005, Guardian Angel deposited $99,000 with MetaBank through the use of third party broker Jumbo CD Investments, Inc. ("Jumbo"). Guardian Angel received a certificate of deposit ("CD") evidencing the deposit, naming MetaBank as the obligor, and outlining the terms of the deposit

under cover of letter from or signed by Charlene Pickhinke, who at the time was a branch manager of MetaBank's Sac City Iowa branch.  Guardian Angel renewed the CD on or about April 17, 2006 and again on or about April 17, 2007.  Guardian Angel had no direct contact with MetaBank and all of its transactions with MetaBank and Pickhinke were arranged by Jumbo.

On or about January 25, 2008, MetaBank sent Guardian Angel a letter stating that MetaBank had "recently become aware of unauthorized certificates of deposit issued under its logo and brand name."  (Compl. at 3 ¶ 9, Ex. E, Doc. No. 1.)  Pickhinke allegedly absconded with Guardian Angel's deposit and other deposits made with MetaBank totaling approximately $4.2 million in face value over the course of three years.  Pickhinke maintained the stolen funds in her own account with MetaBank for a period of time, and MetaBank failed to detect her theft or protect the interests of any of the affected customers.  Guardian Angel and its counsel have made repeated demands on MetaBank for return of its deposit, plus accrued interest due, but MetaBank has refused to pay Guardian Angel and has told Guardian Angel that the CD was unauthorized.

Guardian Angel filed this action on behalf of itself and a putative class comprised of approximately 50 members, charging

MetaBank with breach of contract and negligence, as well as alleging that MetaBank is liable for the acts and omissions of Pickhinke on theories of respondeat superior, agency, and vicarious liability.  The proposed class consists of individuals and legal entities residing and/or doing business within the United States of America who satisfy the following criteria: (a) the class member made a deposit with MetaBank, or any predecessor-in-interest, parent or subsidiary, or any employee, representative or agent thereof, with the intention of receiving a CD from such institution; (b) MetaBank, or any employee, representative or agent thereof, issued the class member a CD on account of such deposit; (c) a MetaBank employee, representative or agent, whether current or former, has absconded with the deposit made by the class member; and (d) as of the date of Guardian Angel's Complaint, MetaBank has failed to repay the class member the deposit which it made and/or any accrued interest.  Guardian Angel alleges that there are approximately fifty class members hailing from numerous states including, *inter alia*, New Hampshire, California, Hawaii, Pennsylvania, Michigan, Texas, Connecticut, New York, Kansas, and Ohio.

Guardian Angel asserts that each class member deposited the same amount with MetaBank, and the sole question that is unique

to each class member is the amount owed in interest, depending on when each deposit was made. Guardian Angel also argues that "[t]he claims available to each Class member are identical, and the fact patterns underlying each Class member's claims are substantially identical." (Pl.'s Mot. for Class Certification at 5 ¶ 5, Doc. No. 16.)

Guardian Angel's Complaint includes four counts. Count One alleges that MetaBank's failure to repay the deposit and each class member's accrued interest constitutes a breach of contract. In this count Guardian Angel argues that Pickhinke had actual and/or apparent authority to bind MetaBank with respect to such contracts. Count Two alleges that MetaBank was negligent in the hiring, retention, and supervision of Pickhinke. Count Three alleges that MetaBank is vicariously liable for Pickhinke's acts and omissions, including conversion, fraud, theft, and negligence. Count Four seeks attorney's fees and costs.

## II.   CLASS CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 sets out the requirements for class certification. The proposed class representative must demonstrate that each of Rule 23's requirements has been satisfied. Makuc v. Am. Honda Motor Co., Inc., 835 F.2d 389, 394

(1st Cir. 1987).  The class certification inquiry has two steps.  First, the class representative must show that the proposed class satisfies all four of Rule 23(a)'s threshold requirements, which are commonly known as numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a)(1)-(4); see also Berenson v. Nat'l Fin. Servs. LLC, 485 F.3d 35, 38 (1st Cir. 2007).  Second, the class representative must demonstrate that the lawsuit may be maintained as a class action under one of the three subsections of Rule 23(b), which allow class actions where: (1) separate actions by or against individual class members would risk imposing inconsistent obligations on the party opposing the class; (2) "the party opposing the class has acted or refused to act on grounds that apply generally to the class" and injunctive relief is appropriate; or (3) common questions of law or fact predominate and a class action would be the superior method of proceeding.  Fed. R. Civ. P. 23(b)(1)-(3).

Although the Supreme Court has stated that a court should not decide the merits of a case at the certification stage, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), a motion to certify "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978)

-5-

(quoting Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 558 (1963)). The First Circuit has determined that "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). In doing so, a district court may resolve disputed factual issues that arise in the course of class certification by considering materials beyond the pleadings. In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 6 (1st Cir. 2005).

### III.  ANALYSIS

Guardian Angel asserts that its Complaint satisfies all of the Rule 23(a) prerequisites and is eligible for certification under either Rule 23(b)(1) or Rule 23(b)(3). MetaBank challenges both contentions. For the reasons set forth below, I determine that certification is not warranted under either prong of Rule 23(b). Accordingly, I deny Guardian Angel's motion to certify without taking up MetaBank's Rule 23(a) challenges.

**A.   Rule 23(b)(1)**

Rule 23(b)(1) encompasses two types of cases. Rule 23(b)(1)(A) covers cases in which a party opposing certification could be subject to "incompatible standards of conduct" if the

claims of individual class members are tried separately. Rule 23(b)(1)(B) applies where the prospect of separate trials for some or all class members could prove to be dispositive of other class members' claims. Neither subsection applies in this case.

This is not a case in which MetaBank may be subject to incompatible standards of conduct if the cases are tried separately. Guardian Angel seeks damages rather than injunctive relief. Thus, there is little risk that MetaBank could be subject to inconsistent court orders if the cases are tried separately. Certification under Rule 23(b)(1)(A) ordinarily is not warranted in such cases. See In re Tyco Int'l, Ltd., 2006 WL 2349338, at *3 n.1 (D.N.H. Aug. 15, 2006).

Rule 23(b)(1)(B) is also inapplicable because this is not a "common fund" action in which the claimants are attempting to recover against a defendant with insufficient assets to satisfy all possible claimants. Further, earlier decisions if the class members' claims are tried separately will have, at most, a *stare decisis* effect in later actions, and the First Circuit has held that "the effect of *stare decisis*, standing alone, will not justify class certification under Rule 23(b)(1)(B)." Tilley v. TJX Co., Inc., 345 F.3d 34, 42 (1st Cir. 2003).

-7-

**B.    Rule 23(b)(3)**

Guardian Angel also asserts that a class can proceed under Rule 23(b)(3).  "[T]he (b)(3) class action was intended to dispose of all other cases in which a class action would be 'convenient and desirable,' including those involving large-scale, complex litigation for money damages."  Allison v. Citgo Petroleum Corp., 151 F.3d 402, 412 (5th Cir. 1998)(quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)).  Unlike (b)(1) and (b)(2) class actions, participation in a (b)(3) class is not mandatory; the court is obliged to notify putative class members that they may opt out of the class and seek relief as individuals.  See Fed. R. Civ. P. 23(c)(2)(B); Amchem, 521 U.S. at 617.  A class should proceed under Rule 23(b)(3) if two criteria are met.  First, common questions of law or fact must predominate over any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  Second, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Id.  These two requirements ensure that class certification is granted "only where the adjudication of common issues in a single action will achieve judicial economies and practical advantages without jeopardizing procedural fairness."  Rothwell v. Chubb Life Ins. Co. of

-8-

America, 191 F.R.D. 25, 29 (D.N.H. 1998) (citations omitted).

To determine whether common issues predominate in a proposed class action, courts often look for "an essential common link among class members" that can be remedied through litigation. 2 Newberg § 4.25 (4th ed.). Thus, common issues are deemed to predominate when the class shares issues of "overriding significance," such as a determination of defendant's liability, so that separate adjudication of individual liability claims would be unnecessary. See 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778.

Guardian Angel claims that all proposed class members were victim of the same common course of conduct. Although the class members purchased their CDs separately and on different dates, Guardian Angel claims that the trial will focus on MetaBank's receipt of deposits from the class members, its hiring and management of employees such as Pickhinke, its responsibility for Pickhinke's actions, and its failure to return deposits and interest that were made to MetaBank by the plaintiffs. Such common issues, Guardian Angel argues, will predominate over any issues peculiar to individual plaintiffs. Furthermore, Guardian Angel argues that, since discovering the issue, MetaBank has treated the plaintiffs as a putative class through the mailing of

form letters to the plaintiffs and the lumping of the conduct against the plaintiffs together as a singular fraud in its SEC filings. (See Pl.'s Ex. 2, 3, and 4, Doc. No. 17.) Guardian Angel argues that this treatment by MetaBank is "tantamount to an admission of the appropriateness of class adjudication." (Pl.'s Mot. for Class Certification at 7-8 ¶ 8, Doc. No. 16.)

MetaBank responds by arguing that the class members' claims involve an overwhelming number of individual issues of law and fact that preclude the certification of a class. First, MetaBank contends that certification of Guardian Angel's claims into a class action would be problematic because of the potential for variations in the law governing its claims. See e.g., Castano v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."). MetaBank argues that Guardian Angel has failed to meet its burden of assisting the court in determining how the laws of different states affect the litigation.

In a diversity case, the forum state's choice of law rules apply. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 5 (1st Cir. 2004). New Hampshire's choice of law rules provide

that a court should consider "(1) the predictability of results; (2) the maintenance of reasonable orderliness and good relationships among the States in the federal system; (3) simplification of the judicial task; (4) advancement of the governmental interest of the forum; (5) and the court's preference for what it regards as the sounder rule of law." LaBounty v. Am. Ins. Co., 122 N.H. 738, 741 (N.H. 1982) (citations omitted). With respect to contracts, New Hampshire's choice of law rules require the application of the law of the jurisdiction with the most significant relationship to the contract. See Glowski v. Allstate Ins. Co., 134 N.H. 196, 197-98 (N.H. 1991). Thus, for each of the class members, MetaBank contends that this court would be required to determine which state's substantive law applies using the factors described above. Guardian Angel has not responded to this contention.

MetaBank has also provided charts of the law governing apparent authority, negligence, and vicarious liability claims under the law of several of the states mentioned in Guardian Angel's motion for class certification to show that material differences exist that will require individual adjudication and defeat any efficiency achieved by the class action mechanism. Further, MetaBank contends that the court will have to engage in

individualized factual inquiries into the circumstances of each class member's purported transaction.  MetaBank alleges that Guardian Angel's claims are premised upon highly specific facts and will be subject to unique defenses.  Specifically, MetaBank argues that the fact that Guardian Angel communicated exclusively with third party broker Jumbo (Dumoulin Tr. at 81-82, 95 (Doc. No. 22-5); Gilbert Tr. at 46-48, Doc. No. 22-4), had no direct contact with Pickhinke or MetaBank (Dumoulin Tr. at 84-85 (Doc. No. 22-5); Gilbert Tr. at 79, Doc. No. 22-4), conducted no due diligence with respect to the CD, its issuance or MetaBank itself (Dumoulin Tr. at 78,84-85, 94-97, Doc. No. 22-5; Gilbert Tr. at 70, Doc. No. 22-4), and failed to ask for or obtain an executed copy of the CD (Gilbert Tr. at 156-57, Doc. No. 22-4), raises individual and unique questions which will predominate the court's analysis of Guardian Angel's claims.

Again, Metabank has failed to present an effective response.  Accordingly, I accept the premises on which MetaBank's arguments are based and turn to a more detailed analysis of Guardian Angel's specific claims.

    1.    **Count One: Breach of Contract**

As to Guardian Angel's breach of contract claim, the evidence as to whether MetaBank entered into a contract with each

of the putative class members will likely vary from case to case. MetaBank asserts that it neither issued any CDs for the putative class members nor authorized Pickhinke to issue any of the CDs (Reynolds Aff. at ¶¶ 7, 10, 12, Doc. No. 23.)  Rather, MetaBank asserts that Pickhinke acted in her own interest, unknown to MetaBank, and outside the scope of her employment by creating accounts for the putative class members and issuing CDs.  To bind a principal to a contract entered into by its agent, the agent must have had either actual or apparent authority to enter into the contract on the principal's behalf.  See, e.g., Commercial Assocs. v. Tilcon Gammino, Inc., 998 F.2d 1092, 1099 (1st Cir. 1993).

If, as MetaBank asserts, Pickhinke did not have actual authority to sell these CDs, the court will need to determine whether she had apparent authority to sell the CDs and bind MetaBank.  "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Restatement (Third) of Agency § 2.03 (2006).  The standards for finding apparent authority, however, vary significantly under the laws of

-13-

the states mentioned in Guardian Angel's motion.  See e.g., Dent v. Exeter Hosp., Inc., 155 N.H. 787, 792 (N.H. 2007) (holding that apparent authority "exists where the principal so conducts itself as to cause a third party to reasonably believe that the agent is authorized to act"); Associated Creditors' Agency v. Davis, 530 P.2d 1084, 1100 (Cal. 1975) ("[T]hree requirements [are] necessary before recovery may be had against a principal for the act of an ostensible agent.  The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence.").  The distinctions in the law of apparent authority of the various states implicated by this action appear to preclude class-wide analysis.

Furthermore, even if there were no variations in state laws to be applied, whether Pickhinke had apparent authority is an individualized, fact specific question.  The determination of whether apparent authority exists focuses in large part on whether each individual plaintiff had a reasonable belief that Pickhinke was authorized to act for MetaBank.  This reasonable belief element is not readily susceptible to class-wide proof.

An individualized inquiry will be necessary in part because MetaBank's course of conduct in relation to the putative class members differed in that it allegedly communicated directly with some of the putative class members, but had no contact with others. For example, Guardian Angel's use of third party broker Jumbo, lack of any direct contact with Pickhinke or MetaBank, and alleged failure to engage in any due diligence with respect to MetaBank all raise individual and unique questions as to whether Guardian Angel's belief in Pickhinke's authority to bind MetaBank was reasonable.

In sum, I conclude that Guardian Angel has not met its burden of demonstrating common issues will predominate over individual legal and factual issues in its breach of contract claim.

### 2. Count Two: Negligence

As to Guardian Angel's negligence claim, the laws governing claims of negligent hiring, retention, and supervision also vary. For example, under Ohio law

> [t]he elements of a claim for negligent hiring, supervision, and retention are (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's knowledge of the employee's incompetence, (4) the employee's act or omission causing the plaintiff's injuries, and (5) a causal link between the employer's negligence in

>     hiring, supervising, and retaining and the plaintiff's
>     injuries.

Lehrner v. Safeco Ins./Am. States Ins. Co., 872 N.E.2d 295, 305 (Ohio Ct. App. 2007)(citation omitted).  Under Texas law, an employer "is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others."  Dangerfield v. Ormsby, 264 S.W.3d 904, 912 (Tex. Ct. App. 2008).

Thus, if MetaBank is correct in its argument regarding the governing law, individualized analysis will predominate with respect to this claim as well.  Because Guardian Angel has done nothing to rebut MetaBank's argument and demonstrate that these variances in state law will not apply in this case, I conclude that Guardian Angel has not met its burden of showing that common issues predominate with respect to this claim.

### 3.   **Count Three: Vicarious Liability**

In count three, Guardian Angel seeks to hold MetaBank vicariously liable for various torts allegedly committed by

Pickhinke.[1]  Differences in state laws governing vicarious liability could affect the disposition of class claims and preclude class-wide analysis.  For example, under California law, vicarious liability can be imposed upon an employer even if "an employee is not engaged in the ultimate object of his employment at the time of his wrongful act," and an "employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer." Farmer Ins. Group v. County of Santa Clara, 906 P.2d 440, 448-49 (Cal. 1995) (citations omitted).  Under Texas law, an employer is vicariously liable for its employee's tort "only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 757 (Tex. 2007)(quoting Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002)).  Under New York law, an employer may be

---

[1] Vicarious liability is a theory of recovery, not a claim unto itself.  Further, Guardian Angel states that Pickhinke's acts and omissions include "conversion, fraud, theft, and negligence." (Compl. at 10 ¶ 45, Doc. No. 1).  Guardian Angel, however, has pled only a claim of negligence in its Complaint.  Because I deny Guardian Angel's motion to certify on other grounds, I decline to address these deficiencies at this time.

liable for the acts of its employee where the employee "is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities." Lundberg v. State, 255 N.E.2d 177, 179 (N.Y. 1969) (citations omitted).

Even if these variations in state laws do not affect this case as MetaBank argues, Guardian Angel's allegations with respect to vicarious liability will still require individualized analysis because Guardian Angel seeks to hold MetaBank vicariously liable for Pickhinke's alleged fraud. Resolution of this fraud claim requires proof both that Pickhinke made misrepresentations and that the individual class members reasonably relied on those representations. See Rothwell, 191 F.R.D. at 31. Guardian Angel had shown no reason why reliance could be presumed in this case. Thus, the court will have to analyze proof of reliance individually with respect to each individual class member and certification of the class is inappropriate. See id. at 31-32 (noting that certification generally is inappropriate when individual reliance is an issue); Castano, 84 F.3d at 745; Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir. 1996).

In sum, the predominance of individualized legal and factual issues throughout Guardian Angel's Complaint leads me to find that the proposed class is not "sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623. MetaBank has set forth a substantive argument that variations in state law may predominate over the common legal issues in this case.  Guardian Angel has done nothing to dispute MetaBank's argument and thus has failed to meet its burden of demonstrating to the court that variations in state laws will not predominate over common legal issues in this case.  Further, MetaBank has demonstrated that individual factual issues will predominate when determining whether Pickhinke had apparent authority to bind MetaBank in contract and whether individual class members reasonably relied on Pickhinke's alleged misrepresentations. Guardian Angel has done nothing to demonstrate that these individual factual issues will not be an impediment to efficient class adjudication.  Accordingly, where Guardian Angel has not shown that common legal and factual issues predominate, a class action is not the superior means of resolving its claims and certification under Rule 23(b)(3) would be inappropriate on this record.

## IV. CONCLUSION

For the reasons stated herein, I deny plaintiff's motion for class certification (Doc. No. 16) based on Guardian Angel's failure to satisfy its burden with respect to the requirements of Rule 23(b).

SO ORDERED

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 12, 2009

cc: Christopher T. Meier, Esq.
 Bruce W. Felmly, Esq.
 Christine B. Cesare, Esq.
 Rachel E. Barber Shwartz, Esq.