IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|                                                           |   |                        |
|-----------------------------------------------------------|---|------------------------|
| GUARDIAN ANGEL CREDIT UNION,<br>on its own behalf and on behalf of a<br>class of persons similarly situated,<br>Plaintiff, | ) ) ) ) ) ) | Case No. 08-cv-261-PB |
| v.                                                        | ) ) |                      |
| METABANK, and<br>META FINANCIAL GROUP, INC.,<br>Defendants. | ) ) ) ) |                  |

### MOTION TO RECONSIDER THIS COURT'S MEMORANDUM AND ORDER OF AUGUST 12, 2009 WITH INCORPORATED MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S OBJECTION TO MOTION FOR CLASS CERTIFICATION

Now comes the Plaintiff, Guardian Angel Credit Union, by and through its attorneys, Cooper Cargill Chant, P.A., and hereby moves the Court to reconsider its Memorandum and Order of August 12, 2009 with respect to the Plaintiff's motion for class certification, and in support says:

1. Counsel for the parties attended a pre-trial conference with the Court on October 2, 2008, at which time a colloquy took place with respect to the issues relating to class certification which included a discussion that the likely choice of law would by the law of the State of Iowa, as well as a disclosure that the Court would be involved in a trial in Commonwealth of Puerto Rico for multiple months in the winter of 2009.

2. Subsequent to that pretrial conference and in anticipation of the Court's absence from New Hampshire, the parties filed a Joint Proposed Scheduling Order (Document 13), which included the following provision with respect to the class certification:

> "It is contemplated that the Plaintiff will move for class certification in the near on or before December 15, 2008. The Defendants anticipate filing an objection and shall file the objection on or before January 15, 2009. After the Defendant has filed its objection, **the Plaintiff shall than have an opportunity to respond or reply to the opposition not later than five days before the hearing on the matter.** A hearing on class certification will be scheduled during the month of February, 2009, at the convenience of the Court."

3. The Scheduling Order was endorsed and approved by this Court on December 16, 2008, while also delaying the filing of the Motion for Class Certification to December 19, 2008.

4. The Motion for Class Certification was duly filed on December 19, 2008 (Document 16).

5. Over the Plaintiff's objection, the Court on January 13, 2009 granted the Defendant's Motion to Extend the time for its objection to February 12, 2009, virtually guaranteeing that a hearing on the issue of class certification would not be held until after the Court's return from Puerto Rico.

6. After the Court returned from Puerto Rico, the Plaintiff contacted the scheduling clerk on multiple occasions to determine when a hearing would be held on the motion for class certification since by the scheduling order, that was in fact the triggering date for when a response was due to the Defendant's objection.

7. On July 31, 2009, the Plaintiff filed a Motion for Telephonic Status Conference, which was denied by this Court on August 3, 2009, with the Court indicating that it would be issuing a decision on Class Certification within days.

8. This Court was clear in its Memorandum and Order of August 12, 2009 that the failure of the Plaintiff to file a response to the issues raised by the Defendant in its objection to class certification was significant, with "the Court accepting the premises on which Metabank's arguments are based..." Page 12.

9. The Plaintiff and its counsel interpreted the approved Scheduling Order of requiring a response after the notice of hearing on the Motion for Class Certification. While certainly, the Plaintiff, and it particular its counsel, was aware that it could have filed such a response earlier, given the language of the Scheduling Order, and the significance of the failure of the Plaintiff to respond in the context of this Court's Order, it would be unreasonable not to have the issue of class certification reconsidered in light of the incorporated response.

<b><u>Incorporated Memorandum of Law in Response<br>to Objection to Class Certification</u></b>

I. *Choice of Law is the law of the State of Iowa*

As noted by this Court at Page 10 of its Memorandum and Order, MetaBank contends that the certification would be problematic because of the potential for variations of law governing the claims. The New Hampshire choice of law rule is the applicable standard as outlined in *LaBounty v. Am. Ins. Co., 122 N.H. 738, 741 (N.H. 1982)*. As correctly cited by this Court, with respect to contracts, it is the law of the jurisdiction with the most significant relationship to the contract. By both the pleadings filed by the Plaintiff and the Affidavit filed by the Defendant by the MetaBank investigator, Iowa was the state into which all payments were sent by the various class members, MetaBank (or its predecessor First Federal) with an address of Sac City, Iowa were identified on the Certificate of Deposit Signature Cards (Exhibits B and C to the Complaint) and certainly under the circumstances as pled MetaBank would not have reasonably been expected to be hauled into New Hampshire. *Staffing Network, Inc. v. Pietropaolo, 145 N.H. 456, 458 (N.H. 2000)*. Furthermore, with respect to all of the tort claims

against Metabank, liability arises out of the relationship between an Iowa employer and Iowa employee. Iowa is the state with a substantial connection with the total facts, and the only relationship the class holder state would have would be the domicile of each class holder, which is not sufficient in itself to warrant the application of non-Iowa law. *LaBounty*, 122 N.H. at 743. The law of Iowa should apply universally to all claims by all class members.

II.     *Count I - Breach of Contract*

To prevail on a breach-of-contract claim under Iowa law, Guardian must prove: (I) the existence of a contract; (ii) the terms and conditions of the contract; (iii) Guardian has performed all of the terms and conditions required under the contract; (iv) the Bank's breach of the contract in some particular way; and (v) Guardian suffered damages as a result of the breach." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). The Bank will have breached the contract if, without legal excuse, it "fails to perform any promise which forms a whole or a part of the contract." *Id.*

In this Matter, the crux of the breach-of-contract claim is element (I), the existence of a contract – if Pickhinke created contracts between the Bank and each Certificate purchaser, the facts show the remaining elements are present for a breach of contract. To create a contract between the Bank and the Certificate purchaser, Pickhinke must have had authority, either actual or apparent, to do so. It appears from the facts that Pickhinke did not have actual authority to enter into the fraudulent Certificates, so Guardian must prove apparent authority.

In Iowa, Pickhinke's authority is defined by the common law rules of agency. *See Ashland Towson Corp. v. West Side Savings Bank*, 248 N.W. 336, 338 (Iowa 1933) (stating that the acts of officers of a bank are governed by the general rules of agency law). Iowa has adopted

4

the Restatement (Third) of Agency (the "Restatement"). *See e.g.*, *Jasper v. Nizam, Inc.*, 764 N.W.2d 751 (Iowa 2009); *In re Estate of Anton*, 731 N.W.2d 19 (Iowa 2007). The scope and extent of an agent's authority is a question of fact, to be determined from all the facts and circumstances in evidence. *Hall v. Crow*, 34 N.W.2d 195, 200 (Iowa 1949).

Under the Restatement, apparent authority is "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement § 2.03. The "principal must have acted in such a manner as to lead persons dealing with the agent to believe the agent has authority." *Rogers v. Energy Panel Structures, Inc.*, 739 N.W.2d 503, 2007 WL 2257566, * 4 (Iowa App. Aug. 8, 2007). This manifestation by the principal may be intentional or negligent, by action or inaction, but is such that the public is led to believe the agent possesses the authority to act and such belief is reasonable and causes a person to then act in good faith based on that belief. *Id.*; *see also Wilkins v. Marshalltown Medical & Surgical Center*, 758 N.W.2d 232, 236 (Iowa 2008). The manifestation by the principal does not need to be in specific words to the third party. For example, "[i]f the principal places a person in a position or office with specific functions or responsibilities, from which third parties will infer that the principal assents to acts by the person requisite to fulfilling the specific functions or responsibilities, the principal has manifested such assent to third parties." *Restatement* §1.03 cmt. b.

Even where apparent authority is not necessarily present, a person may be estopped from denying the existence of an agency relationship if (I) a third party is justifiably induced to make a detrimental change in position because the transaction is believed to be on the person's account

and (ii) the person intentionally or carelessly caused such belief. *Restatement* § 2.05. In such cases, the person estopped may be responsible for the third party's erroneous belief as the consequence of a failure to use reasonable care to prevent circumstances that foreseeably led to the belief. *Id.* cmt. c.

In the plea agreement between the United States and Charlene Pickhinke, attached here to as Exhibit 1, Ms. Pinkhinke stipulated as to certain facts including: (1) that she was employed as a branch manager of the Sac City, Iowa branch; (2)that she established relationships with entities [the brokers] that referred potential CD purchasers to CD sellers; (3) "Upon receiving a referral from one of these entities, defendant [Pickhinke] negotiated the sale of a CD to the referred buyer. In negotiating the sale, defendant fraudulently represented that she was selling the CD on behalf of the bank where she worked...; (4) In furtherance of the scheme, defendant provided the CD buyers with fraudulent CDs that appeared to be properly issued by the bank; and (5) The fraudulent CDs were created using her employer forms or computer generated forms that appeared to be legitimate forms of her employer." Certainly under the law of Iowa on a class common issue, by Ms. Pinkhinke's admissions alone there is sufficient evidence for a jury to find that the Bank placed Pickhinke in a position (either as teller or, more importantly, as branch manager) with specific functions and responsibilities such that it was reasonable for the Certificate purchasers to believe she had authority to enter into Certificates with them on behalf of the Bank. While MetaBank asserts that the law of various forums would cause individual inquiry on whether each individual plaintiff had a reasonable belief that Pickhinke was authorized to act for MetaBank, based upon the admissions of Ms. Pickhinke, there is no need for such an individualized inquiry, and under this claim, certification of the class is appropriate.

III.   *Count II - Negligence*

As noted above, MetaBank was not correct in its argument regarding the governing law, and thus individualized analysis will not predominate. Iowa recognizes a cause of action against an employer for the negligent hiring, retention and supervision of an employee. *See Godar v. Edwards*, 588 N.W.2d 701, 708-09 (Iowa 1999). "A cause of action based on negligent hiring, supervision, or retention allows an injured party to recover where the employee's conduct is outside the scope of employment, because the employer's own wrongful conduct has facilitated in some manner the tortious act or wrongful conduct of the employee." *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004) (*citing Island City Flying Service v. General Electric Credit Corporation*, 585 So.2d 274, 278 (Fla. 1991))*.* It is fundamental that a claim for negligent supervision and retention arises out of the employer's own conduct. *Kiesau, 686 N.W.2d at 173.* Liability is imposed under the tort of negligent supervision and retention essentially for the failure of the employer to prevent the wrongful conduct by the employee. *See Godar*, 588 N.W.2d at 709 (employer has a duty to use care in hiring, supervising, and retaining people who may present a threat of harm to others).

The claims are, first and foremost, negligence claims. As such, Guardian must prove that the elements of negligence – (I) the existence of a duty to conform to a standard of conduct to protect others, (ii) failure to conform to that standard, (iii) proximate cause, and (iv) damages – exist to prevail on its claims. Furthermore, Guardian must show an (v) underlying tort or wrongful act was committed by the employee, (vi) which act caused a compensable injury. *Schoff v. Combined Insurance Company of America*, 604 N.W.2d 43, 53 (Iowa 1999); *see IMT Insurance Company v. Crestmoor Golf Club*, 702 N.W.2d 492, 496 (Iowa 2005) (in a claim of

negligent retention and supervision, the cause of action arises from the employer's own tortious conduct); *Cubit v. Mahaska County*, 677 N.W.2d 777, 784-85 (Iowa 2004) (claim of negligent supervision must include as an element an underlying tort or wrongful act committed by the employee).

In this Matter, the crux of the negligent hiring, retention and supervision claims are elements (ii) and (iii) – the failure of the Bank to conform to a standard of care and proximate cause. (A court would likely conflate these two elements by determining whether the Bank's conduct could have prevented a foreseeable injury.) Since these issues relate to the acts of MetaBank, and not the class members, no individualized inquiry is required. With respect to element (I), the Iowa Supreme Court recognizes that an employer has a duty to exercise reasonable care in hiring, retaining and supervising individuals to protect members of the public who, because of an employee's employment, may face a threat of injury. *Godar*, 588 N.W.2d 701. The standards of care (and other elements) for each specific claim are set forth below. Further, with respect to elements (v) and (vi), it is clear that there is an underlying tortious act by Pickhinke that caused monetary damages to Guardian. Finally, it should be noted with respect to element (iv), damages, that the underlying tort or wrongful act committed by the employee need not cause physical injury. *Kiesau*, 686 N.W.2d at 169 (reversing Iowa law on this issue).

    a. *Negligent Hiring*

The tort of negligent hiring is based on the principle that a person conducting an activity through employees is subject to liability resulting from conduct in the employment of improper persons involving a risk of harm to others. *Godar*, 588 N.W.2d at 708. In order to recover based on a claim of negligent hiring, Guardian must prove the following: (I) that the Bank knew, or in

8

the exercise of ordinary care should have known, of Pickhinke's unfitness at the time of hiring; (ii) that through the negligent hiring of Pickhinke, Pickhinke's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and (iii) that there is some employment or agency relationship between Pickhinke and the Bank. *Godar*, 588 N.W.2d at 708-09. In short, an employer has a duty to exercise reasonable care in hiring individuals, who, because of their employment, may pose a threat of injury to members of the public. Indeed, an employer may be held liable for negligently hiring an employee who commits a criminal act when the employment relationship is instrumental to the employee committing the crime. *D.R.R. v. English Enterprises, CATV, Division of Gator Transportation, Incorporated*, 356 N.W.2d 580 (Iowa App. 1984).

Based on the facts as presented, it is not clear that the Bank knew, or in the exercise of ordinary care should have known, of Pickhinke's unfitness at the time of hiring. Guardian must establish further facts at the time of the hiring to prevail on this claim, but the same should not prevent certification.

  b. *Negligent Retention*

Retaining an employee that the employer knew, or through the exercise of reasonable care should have known, was unfit may cause the employer to be subject to liability. In order to establish a claim for negligent retention, Guardian must prove that: (1) Pickhinke committed an underlying tort or wrongful act that caused a compensable injury; and (2) the Bank's negligent retention of Pickhinke caused the injury. *Kiesau*, 686 N.W.2d at 172 (Iowa 2004); *Wilson v. Cintas Corp. No. 2*, 760 N.W.2d 211 (Iowa App. 2008). While there is limited case law discussing the tort of negligent retention, in one case the Iowa Supreme Court upheld a dismissal

9

by the district court where there was no evidence in the record to suggest that the employer knew of the employee's conduct, and there was no evidence in the record to suggest that the employer should have been suspicious of the employee's behavior. *Godar*, 588 N.W.2d at 710.

The facts as presented do not appear to show the Bank knew of Pickhinke's conduct nor do they clearly show that the Bank should have been suspicious of her conduct. However, arguably, the Bank was not suspicious of Pickhinke's conduct because of their failure to properly supervise her, as is discussed below.

    c. *Negligent Supervision*

Failing to supervise an employee that the employer knew, or through the exercise of reasonable care should have known, was engaging in improper activities may cause the employer to be subject to liability. In order to prove negligent supervision, Guardian must show: (1) the Bank knew, or in the exercise of ordinary care should have known, of Pickhinke's unfitness at the time she engaged in wrongful or tortious conduct; (2) through the negligent supervision of Pickhinke, her incompetence, unfitness, or dangerous characteristics proximately caused injuries to Guardian; and (3) there is some employment or agency relationship between the Bank and Pickhinke. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673 (Iowa 2004).

From the facts as presented it does not appear the Bank knew of Pickhinke's conduct. However, based on the length of time for which Pickhinke engaged in the tortious conduct, there appears to be a good argument that the Bank should have discovered her actions. This is certainly an issue for discovery, and ultimately factual resolution, but does not go to the issue of class certification.

IV.    *Count III - Vicarious Liability*

Unlike negligent hiring, retention and supervision, *respondeat superior* imposes strict liability on employers, but only for acts committed within the scope of the employee's employment. *Kiesau*, 686 N.W.2d at 172. In Iowa, a claim of vicarious liability under the doctrine of *respondeat superior* rests on two elements: (1) proof of an employer/employee relationship (or employment as an independent contractor); and (2) proof that the injury occurred within the scope of that relationship. *Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198 (Iowa 2007). The doctrine gives the injured party the right to sue the employer with or without joining the employee as a party to the action. *Dickens v. Associated Anesthesiologists, P.C.*, 709 N.W.2d 122, 125 (Iowa 2006) (*citing Brosamle v. Mapco Gas Products, Inc.*, 427 N.W.2d 473, 475 (Iowa 1988). Under the doctrine, the employer is vicariously liable for certain acts of its employees. *Dickens*, 709 N.W.2d at 125. The employer has no liability unless the employee is liable. *Id.* (*citing Peppmeier v. Murphy*, 708 N.W.2d 57, 63-64 (Iowa 2005). To be within the scope of employment, the conduct complained of must be of the same general nature as that authorized or incidental to the conduct authorized. "Thus, an act is deemed to be within the scope of one's employment where such act is necessary to accomplish the purpose of employment and is intended for such purpose." *Stephenson v. Wellmark, Inc., 705 N.W.2d 106 (Table) (Iowa App. 2005)* (citing and quoting *Godar*, 588 N.W.2d at 705-06). A deviation from the employer's business or interest to pursue the employee's own business or interest must be substantial in order to relieve the employer from liability, *i.e.*, the employee's conduct must be so unlike that authorized that it is considered substantially different. *Godar*, 588 N.W.2d at 706. However, the mere fact that an employee's actions were incidental to duties authorized by the employer does not necessarily support a finding that the conduct furthers the objectives of the

employer. *Godar*, 588 N.W.2d at 707. The ultimate question is whether the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed. *Godar*, 588 N.W.2d at 706. .

In addition to the above, various Iowa courts have cited approvingly a series of factors listed in the Restatement (Second) of Agency. The Restatement (Second) of Agency lists the following factors to be considered in determining whether conduct of an employee may be characterized as occurring within the scope of the employee's employment: (a) whether or not the act is one commonly done by such servants; (b) the time, place and purpose of the act; (c) the previous relations between the master and the servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant; (f) whether or not the master has reason to expect that such an act will be done; (g) the similarity in quality of the act done to the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (I) the extent of departure from the normal method of accomplishing an authorized result; and (j) whether or not the act is seriously criminal. *Riniker v. Wilson*, 623 N.W.2d 220, 231 (citing Restatement (Second) of Agency § 229(2) (1957)). However, as was discussed above with respect to apparent authority, Iowa has now adopted the Restatement (Third) of Agency. The Restatement (Third) does not contain this general list of factors, but instead focuses on whether the employee's conduct was an independent course of conduct not intended by the employee to serve any purpose of the employer. *Restatement (Third) of Agency § 7.07(2)*. The comments to the Restatement (Third) note that criminal conduct may indicate a departure from the scope of employment, but indicate

that an intentional tort may also be within the scope of employment depending on the facts and circumstances of the employment. *Id.* at cmt. c.

Generally, whether an act is within the scope of employment is a fact question. *Riniker*, 623 N.W.2d at 231 (citing *Sandman*, 154 N.W.2d at 117). Certain criminal actions undertaken by an employee, which the employer argued were outside the scope of employment as a matter of law, have been found to be jury questions. Such decisions occurred where (a) the employer put the employee in a position to perform the tort; (b) the tort appeared to be within the scope of the job; and (c) it should be foreseeable to the employer that giving the employee such authority would allow the employee to take certain wrongful actions within the scope of the job. *See Riggan v. Glass*, 734 N.W.2d 486 (Table) (Iowa App. 2007).

The *Riggan* decision, **an unpublished Iowa Appeals Court decision**, is the case most similar factually to this Matter. In *Riggan*, Ray Glass, the president, CEO and a loan officer for Hawkeye State Bank, wrote phony loans for numerous bank customers and then deposited the proceeds in his personal account, the account of his spouse, or the accounts of other customers whose loans were in default. In addition to self-benefit, Glass was also concerned about masking certain loan losses of the bank. On the defendant's motion for summary judgment, looking at the evidence in the light most favorable to the non-moving party, the court found there was sufficient evidence from which the jury could conclude Glass was acting within the scope of his employment. The court noted he was not only the CEO and president, but also in charge of the loan department. His criminal conduct—creating loans and directing where the proceeds of those loans would go—was well within his assigned duties at the bank. The bank delegated to Glass broad authority in the loan-making area, and failed to set up safeguards to oversee the loan

transactions. Additionally, one of his purposes behind the embezzlement was to hide loan losses and to make the bank appear to be more profitable than it actually was. The court noted that it should have been reasonably foreseeable to the bank that a person in Glass' position might abuse his authority to make the bank, and himself, look better and to benefit personally as well. The court noted, quoting *Olson v. Tri-County State Bank*, *456 N.W.2d 132, 135 (S.D.1990),* that it is "far from unusual or startling that a bank employee would use his position to misappropriate money." Therefore, given his position, the fact that the loans benefitted the bank, and the broad delegation of authority given to him, there was substantial evidence to support the jury's conclusion that the tortious conduct occurred in the course of his employment.

The *Riggan* court also cited approvingly *Gina Chin & Associates v. First Union Bank*, *537 S.E.2d 573, 577-79 (Va. 2000),* which held that the question of whether a bank teller's scheme to deposit forged checks into an acquaintance's account was a proper question for a jury. The *Gina Chin & Associates* case held that an employer may still be liable for an improper act that does not benefit the employer if the wrongful act committed by the employee was in the course of his normal duties. *Id.*; *see also Commercial Business Systems, Inc. v. Bell South Services, Inc.*, *453 S.E.2d 261 (1995).*

Based on a review of Iowa case law and the *Riggan* case (if it is given precedential value by this Court in applying Iowa law), Guardian's *respondeat superior* claim poses a fact question. With respect to the two elements required by Iowa law, it is clear that there was an employment relationship between Pickhinke and the Bank. Depending upon the authority delegated to Pickhinke, a reasonable jury could find that opening the Certificates on behalf of customers was well within Pickhinke's assigned duties.

14

While MetaBank argues that the vicarious liability claim will require individualized analysis of Pinkhinke's alleged fraud, and in a particular the issue of justifiable reliance. As a Restatement state, Iowa law recognizes a presumption of reliance with respect to fraudulent misrepresentation. *Restatement (Second) of Torts § 540* (The recipient of a fraudulent misrepresentation is justified in relying upon the its truth, although he might have ascertained the falsity of the representation had he made an investigation.) This presumption, applies as well to class action certification, so long as the misrepresentation is uniform. *Vos v. Farm Bureau Life Ins. Co., 667 N.W.2d 36, 53 (Iowa 2003)*. As Ms. Pinkhinke plea agreement established, Ms. Pinkhinke uniformly fraudulently represented that she was selling the CD on behalf of the bank where she worked...; provided the CD buyers with fraudulent CDs that appeared to be properly issued by the bank; and the fraudulent CDs were created using her employer forms or computer generated forms that appeared to be legitimate forms of her employer. As such the issue of vicarious liability requires no individualized determination of reliance, and instead so long as the Plaintiff proves that the injuries occurred within the scope of employment relationship, MetaBank is strictly liable for the damages.

WHEREFORE, your Plaintiff moves that this Court reconsider its Memorandum and Order of August 12, 2009, and upon doing so, grant the Plaintiff's Motion for Class Certification; and for such other relief as maybe equitable and just.

Respectfully Submitted,

								The Plaintiff,
								**GUARDIAN ANGEL CREDIT UNION,**
								By its Attorneys,

								/s/ Randall F. Cooper

Dated: August 16, 2009

								Randall F. Cooper, Bar ID #501
								COOPER CARGILL CHANT, P.A.
								2935 White Mountain Highway
								North Conway, NH 03860
								Voice: (603) 356-5439
								Fax: (603) 356-7975
								E-Mail: rcooper@coopercargillchant.com

## Certificate of Service

I, Randall F. Cooper, hereby certify that on the date shown, I served the foregoing document upon counsel of record for the defendants, Bruce Felly, McLane Law Firm, 900 Elm Street, PO Box 326, Manchester, NH 03105, by filing with the CM/ECF system.

								/s/ Randall F. Cooper

Dated: August 16, 2009

								Randall F. Cooper, Bar ID #501

Y:\CLIENT FILES\14820 - GUARDIAN ANGEL FCU\14820.600 - MetaBank\Pleadings\Motion to Reconsider.wpd