UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Guardian Angel Credit Union,
on its own behalf and on
behalf of a class of persons
similarly situated**

   v.                                                 Case No. 08-cv-261-PB
                                                              Opinion No. 2011 DNH 112

**Metabank and
Meta Financial Group**

**MEMORANDUM AND ORDER**

Plaintiff Guardian Angel Credit Union ("Guardian Angel") has filed a motion to amend its complaint against MetaBank and Meta Financial Group, Inc. (collectively, "MetaBank") to add a claim for punitive damages.  I deny Guardian Angel's motion because I determine that its proposed amendment would be futile.

**I. BACKGROUND**

Guardian Angel represents a class of plaintiffs that attempted to purchase Certificates of Deposit ("CDs") from defendant MetaBank between 1995 and 2007.  In 2008 Guardian Angel and the other class plaintiffs learned that their CDs had

been fraudulently issued without authorization by an employee of MetaBank, Charlene Pickhinke, who converted many of the funds to her own personal use.[1]

Guardian Angel's initial class-action complaint asserted causes of action against MetaBank for breach of contract, negligent hiring, supervision, and retention, and vicarious liability for Pickhinke's wrongful acts.  Guardian Angel now seeks to amend its complaint to add a claim for punitive damages.  It contends that it discovered new information supporting this claim while taking a deposition of Sandra Hegland, MetaBank's Director of Human Resources.  Hegland testified that she raised concerns regarding Pickhinke to MetaBank's audit department in 2000 and 2002 based on the fact that Pickhinke did not appear to be taking all of her vacation time.  Not taking vacations is a possible sign that an employee is perpetrating a fraud because the employee's constant presence at the office may be required to continue the fraud.  There are apparently no documents available regarding the actions taken by the audit department in response to these concerns.

---

[1] The facts underlying this case are set out in more detail in my Memorandum and Order on the parties' cross-motions for summary judgment (Doc. No. 127).

## II.  STANDARD OF REVIEW

A motion for leave to amend should not be granted if the amendment "would be futile or reward undue delay." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009).  "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." Hatch v. Dep't for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001).  "If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record."  Id.  In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence."  Id.[2]

---

[2] The procedural posture of this motion to amend is unusual because, although it was first filed before summary judgment motions, the parties have since filed their cross-motions for summary judgment.  Because Guardian Angel has had every opportunity to supplement its motion to amend with additional factual information since its initial filing and has chosen not to, I will apply the more rigorous "substantial evidence" standard in this Order.  See Hatch, 274 F.3d at 19 (applying the

### III. **ANALYSIS**

Iowa law allows punitive damage claims where "the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights. . . of another." Iowa Code § 668A.1.[3]  Negligent conduct alone does not support such a claim. Cawthorn v. Catholic Health Initiatives Iowa Corp., 743 N.W.2d 525, 529 (Iowa 2007) ("Punitive damages serve as a form of punishment, and as such, mere negligent conduct is not sufficient to support such a claim.").  Punitive damages can be available against a corporation for the acts of its employees, but "only when the corporate employer wrongfully authorized, contributed to, or ratified the outrageous conduct which caused plaintiff's injury."  Briner v. Hyslop, 337 N.W.2d 858, 861 (Iowa 1983).

This "complicity rule" still requires that the employer act with legal malice, and thus requires at least reckless conduct,

---

substantial evidence standard where "all the pertinent evidence is in the record" and the plaintiff "does not suggest that additional discovery would reveal new facts sufficient to put the case in a different light").  In any event I find that the proposed claim for punitive damages would also be futile under the more relaxed 12(b)(6) standard given the lack of facts pleaded in support of the claim.

[3] I determined in my Order on Class Certification, Doc. No. 58, that Iowa substantive law applies in this case.

not mere negligence.  See Seraji v. Perket, 452 N.W.2d 399, 401 (Iowa 1990) ("It is the reckless conduct of the employer that the [complicity] rule seeks to punish and deter.").  An employer acts recklessly "if it intentionally does or fails to do something it has a duty to do or not to do."  Id. at 402.

The facts that Guardian Angel has identified in its motion to amend do not provide substantial evidence to support a claim for punitive damages.  It is undisputed that MetaBank was completely unaware of Pickhinke's scheme and acted quickly to investigate as soon as it became aware of the fraud in 2008.  Hegland's testimony does little to add to the plausibility of a claim for punitive damages.  As an initial matter, Hegland's decision to contact MetaBank auditors was entirely appropriate and demonstrated the opposite of the institutional recklessness that Guardian Angel must plead to establish a claim for punitive damages.

Most importantly, however, Guardian Angel does not plead any facts showing that MetaBank responded inappropriately to Hegland's complaints.  Cawthorn v. Catholic Health Initiatives Iowa Corp., 743 N.W.2d 525 (Iowa 2007) is instructive in this area.  There the court found that a punitive damages claim against a hospital for the actions of one of its surgeons was

5

not supported by the evidence and was rightfully withheld from a jury.  743 N.W.2d at 529.  This was despite evidence that the hospital had received a prior complaint about the doctor's care.  Id.  The court noted that "[t]hough evidence certainly exists that Mercy Hospital was aware that Dr. Miulli's competency was at issue, the evidence does not support a finding of willful and wanton conduct, as required by section 668A.1(1)(a)."  Id.  While a later investigation did suspend the doctor's license, the "substance of the investigation" was not known by the hospital at the time of the surgery.  Id.

    Here, as in Cawthorn, the mere fact that MetaBank had some evidence that Pickhinke's conduct may have been suspect does not, without more, support a finding of willful and wanton conduct.  Hegland's complaint was based solely on the relatively minor concern that Pickhinke had not been taking all of her vacation time, and Guardian Angel does not identify any additional facts that could have suggested to the audit department the true nature or scope of her scheme.  Any deficiencies in MetaBank's investigation would rise only to the level of negligence.  Therefore Guardian Angel's claim for punitive damages, which requires more than mere negligence, is not supported by substantial evidence.

## IV. CONCLUSION

For all of the foregoing reasons, I conclude that the proposed amendment would be futile and deny Guardian Angel's motion to amend its complaint (Doc. No. 84).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

July 14, 2011

cc: Christopher T. Meier, Esq.
Randall F. Cooper, Esq.
Bruce Felmly, Esq.
Christine B. Cesare, Esq.
Howard M. Rogatnick, Esq.
Ronald Joshua Bliss, Esq.
Cathryn E. Vaughn, Esq.